PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>              v.<br><br>NAVIN KHANNA,<br>  aka Lovin Khanna, and<br>TINU KHANNA,<br>  aka Gagan Khanna,<br><br>                      Defendants. | CASE NO.  2:22-CR-0213-KJM<br><br>MOTION TO REVOKE DISTRICT OF NEW JERSEY RELEASE ORDER |

The United States of America, by and through Assistant United States Attorney Veronica M.A. Alegría, moves pursuant to 18 U.S.C. § 3145(a) to revoke the November 2, 2022 ruling by District of New Jersey Magistrate Judge James B. Clark, III, authorizing the pretrial release of defendants NAVIN KHANNA, aka Lovin Khanna, and TINU KHANNA, aka Gagan Khanna.  This motion is based upon the attached Memorandum of Points and Authorities, incorporated herein by reference, and any evidence and argument that may be presented at a hearing on this matter.

Dated: November 3, 2022

PHILLIP A. TALBERT
United States Attorney

By:  /s/ *Veronica Alegría*
     VERONICA M.A. ALEGRÍA
     Assistant United States Attorney

PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>NAVIN KHANNA,<br> aka Lovin Khanna, and<br>TINU KHANNA,<br> aka Gagan Khanna,<br><br>        Defendants. | CASE NO. 2:22-CR-0213-KJM<br><br>GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REVOKE MAGISTRATE JUDGE'S ORDER RELEASING DEFENDANTS |

The United States moves pursuant to 18 U.S.C. § 3145(a) to revoke the District of New Jersey Magistrate Judge James B. Clark, III's November 2, 2022 order releasing defendants NAVIN KHANNA, aka Lovin Khanna ("N. KHANNA"), and TINU KHANNA, aka Gagan Khanna ("T. KHANNA").

## I.  BACKGROUND

On October 20, 2022, a federal grand jury returned an indictment that charged N. KHANNA, T. KHANNA, and seven other defendants with Conspiracy to Transport Stolen Property Interstate in violation of 18 U.S.C. § 371 (Count One). The grand jury also charged N. KHANNA, T. KHANNA, and two other defendants with Conspiracy to Launder Money in violation of 18 U.S.C. § 1956(h) (Count Two), and charged N. KHANNA and other defendants with Interstate Transportation of Stolen Property (Counts Three through Six). The Honorable Jeremy D. Peterson signed arrest warrants for N.

MOTION TO REVOKE RELEASE ORDER

KHANNA, T. KHANNA, and the other defendants. In the District of New Jersey, Magistrate Judge

James B. Clark, III, signed 6 search warrants, including for the residence and businesses of N.

KHANNA and T. KHANNA, in case numbers 22-mj-12346 through 22-mj-12351. The Affidavit is

attached here as Exhibit A.

As detailed in Exhibit A, N. KHANNA owns DG Auto Parts LLC aka DG Auto Wreckers ("DG

AUTO"), which is a criminal enterprise that receives large shipments of stolen catalytic converters from

its affiliates and franchisees across the nation, including VANG AUTO. N. KHANNA and T.

KHANNA control DG AUTO's finances. DG AUTO has received over $545 million in less than three

years from its sale of catalytic converters and extracted precious metals from catalytic converters to a

metal refinery.

One of DG AUTO's largest customers was Vang Auto LLC or Vang Auto Core LLC ("VANG

AUTO"), which was operated in the Sacramento area by TOU SUE VANG ("T. VANG"), his brother

ANDREW VANG ("A. VANG"), and their mother MONICA MOUA ("MOUA"). Facebook records,

shipping manifests, DG AUTO invoice records, bank records, and other evidence show that VANG

AUTO was shipping stolen catalytic converters from California to DG AUTO in New Jersey and N.

KHANNA and T. KHANNA wired money back to T. VANG and A. VANG. VANG AUTO did not

have a legitimate source of catalytic converters. As N. KHANNA stated on Facebook, "every cat in Cali

in stolen I can promise you that." N. KHANNA and T. KHANNA sent VANG AUTO bank accounts

over $38 million in less than three years.

A confidential informant conducted multiple controlled sales of purportedly stolen catalytic

converters to N. KHANNA and T. KHANNA at DG AUTO starting in April 2022, confirming that N.

KHANNA and T. KHANNA knowingly purchased purportedly stolen catalytic converters. In June, the

confidential informant told N. KHANNA and T. KHANNA that a "cousin" worked at a Toyota

warehouse and could steal brand new Toyota Prius catalytic converters from the warehouse. N.

KHANNA negotiated purchasing 100 "stolen" brand new Prius catalytic converters for 8% over the

market price. On the date of the sale, T. KHANNA paid 8% over the asking price for an entire lot of the

100 new Toyota Prius converters and approximately 198 various catalytic converters. When one DG

AUTO employee wondered where the new Prius converters were from, another replied, "Don't ask,

don't tell policy." T. KHANNA told that employee to quickly get the new Prius catalytic converters out of the DG AUTO warehouse because they were so obviously from an illegitimate source.

N. KHANNA and T. KHANNA also negotiated with the confidential informant a future sale of catalytic converter Prius bricks stolen from the Toyota warehouse by the "cousin."[1] After having the bricks assay tested, N. KHANNA agreed to pay 10% above the market rate for the Prius bricks. On September 1, 2022, during a controlled sale, N. KHANNA and T. KHANNA purchased approximately 98 catalytic converters and 402 Prius bricks from the confidential informant for $259,200, with $50,000 paid in cash. N. KHANNA did not even want to unload the bricks at DG AUTO and they were driven directly to a metal refinery. Acknowledging how obviously stolen the Prius bricks were, he said, "It's actually worse than buying GD3 EA6."[2]

On August 4, 2022, this Court signed an order authorizing wire interceptions of co-defendant Daniel DOLAN's cellular telephone. The wire interceptions confirmed that N. KHANNA and T. KHANNA were controlling the business and finances of DG AUTO and knew that what they were doing was illegal. For example, on August 5, 2022, in a recorded phone call, DOLAN and N. KHANNA discussed the new DG AUTO protocols to not pay customers outside of New Jersey with cash. N. KHANNA explained that it was too risky for DG AUTO employees to travel with cash because law enforcement was "busting everybody." N. KHANNA also said that DG AUTO employees would not be "traveling with cash" because it was "illegal" and being called "racketeering" and buying a catalytic converter with cash would be "committing a crime."

At the execution of a search warrant on November 2, 2022 at N. KHANNA and T. KHANNA's residence, FBI agents seized over $1 million in bulk currency. At N. KHANNA and T. KHANNA's DG

---

[1] The valuable part of a catalytic converter is the core, which contains precious metals, including palladium, platinum, and rhodium. DG AUTO will remove the core from the catalytic converter using a "de-canning" process that crushes the honeycomb structure (or "brick") inside the core, resulting in precious metal powders. The process of de-canning will crush the core or brick inside the catalytic converters. New bricks are also not available for sale to the general public. Therefore, bricks can only be procured from an auto manufacturer prior to their insertion into a catalytic converter.

[2] GD3 EA6 is the parts code for a catalytic converter from a Toyota Prius from years 2004-2009. These are among the most valuable catalytic converters because of their higher concentration of precious metals and are thus the most targeted by thieves. Therefore, a shipment of entirely GD3 EA6 would likely be stolen. Facebook records show, for example, that in March 2021, N. KHANNA negotiated a shipment of 30 GD3 EA6 catalytic converters for $1850 each. N. KHANNA has a vanity license plate on his McLaren that says "GD3 EA6."

MOTION TO REVOKE RELEASE ORDER

AUTO business, FBI agents seized over 170 pallets of catalytic converters. After being advised of his rights pursuant to *Miranda*, N. KHANNA admitted that these pallets were not sorted by DG AUTO and it would be "suspicious and odd" if these pallets consisted of catalytic converters from a single type of vehicle. Indeed, catalytic converter thieves use the DG AUTO Pricing Application to learn real-time pricing information for catalytic converter thieves and DG AUTO customers and then target vehicles with the most valuable catalytic converters. Facebook records, invoices, and shipping manifests show that N. KHANNA and T. KHANNA received shipments consisting entirely or almost entirely of Toyota Prius or Honda Accord catalytic converters from the VANG family. For example, in September 2020, N. KHANNA wrote on Facebook that T. VANG had shipped him "300 sets" of "Prius" that day, for which N. KHANNA and T. KHANNA wired $400,000 to VANG AUTO.

N. KHANNA and T. KHANNA made their initial appearances in the District of New Jersey on November 2, 2022, and were released on unsecured appearance bonds. Both T. KHANNA and N. KHANNA were born in India and maintain ties there. Although N. KHANNA became a U.S. citizen in 2018 though marriage, T. KHANNA is not a U.S. citizen.

## II.     STANDARD

Under the Bail Reform Act, if a person is ordered released by a magistrate judge, then "the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1); *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991); *United States v. Evans*, 62 F.3d 1233, 1237 (9th Cir. 1995) ("Rule 40 and section 3145 . . . place[d] the review of the magistrate judge's order in the province of the district court where the prosecution is pending, and where the bail status of the defendant ultimately will be determined during the course of that trial.").

When considering whether to revoke a release order, the reviewing district court conducts a *de novo* review of a Magistrate Judge's bail ruling. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). It "review[s] the evidence before the magistrate and make[s] its own independent determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193. If the performance of the district court's function "makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is

4

offered that was not presented to the magistrate." *Id.*

### III. ARGUMENT

The Government moves for detention in this case under 18 U.S.C. § 3142(e) because no condition or combination of conditions will reasonably assure the appearance of N. KHANNA and T. KHANNA and they present a danger to the community. The government is entitled to a detention hearing under 18 U.S.C. § 3142(f)(2)(A) because there is a serious risk that N. KHANNA and T. KHANNA will flee.

Each of the § 3142(g) factors weigh in favor of detention. The nature and circumstances of the offense are serious. N. KHANNA and T. KHANNA were operating a sophisticated national criminal enterprise that reached not only California but many other states across the country. On November 2, 2022, DG AUTO customers and affiliates were charged or were the subject of search warrants in eight other states. Catalytic converter theft has become a scourge of this community. Last year, approximately 1,600 catalytic converters were reportedly stolen in California each month, and California accounts for 37% of all catalytic converter theft claims nationwide.[3] The catalytic converter is a necessary part of a vehicle and can cost over $1,000 to replace. Some people have even experienced their catalytic converters stolen multiple times.

Because of their market value, catalytic converter theft has become increasingly violent and gang related. In Minnesota, where a local fence sold catalytic converters to N. KHANNA and T. KHANNA, approximately 30 shooting incidents related to the theft of catalytic converters occurred in the last year. Many of the thieves that sold catalytic converters to the VANG Family had ties to an Asian gang known as "TRG." In November 2021, a homicide occurred at the VANG residence when A. VANG shot a potential burglar who seemingly knew that the VANGs were purchasing stolen catalytic converters from their residence. In Texas, a catalytic converter theft ring was linked to the shooting of a Harris County Sherriff Deputy.[4] DOLAN was recorded stating that he was buying catalytic converters from Mexican cartels on behalf of DG AUTO while on a trip to Texas. During a wire interception, he also stated,

---

[3] https://calmatters.org/economy/2022/10/california-is-a-hotspot-for-catalytic-converter-theft-will-new-laws-make-a-difference.

[4] https://www.khou.com/article/news/crime/catalytic-converter-theft-ring-almendarez/285-07dd5bf4-4b45-4763-9867-d8f331102123

MOTION TO REVOKE RELEASE ORDER

"Let's put it like this, the Mexican cartels love me." N. KHANNA and T. KHANNA are driving and enabling a market that has become gang controlled and deadly. Their actions have caused a danger to the community from both financial and physical harm, and if they are not detained these dangers will persist.

The weight of the evidence is strong. As discussed above and in greater depth in Exhibit A, N. KHANNA and T. KHANNA were recorded during multiple transactions of purportedly stolen catalytic converters and catalytic bricks. Facebook records, shipping manifests, DG AUTO invoices, and financial documents, as well as wire interceptions will show beyond a reasonable doubt that N. KHANNA and T. KHANNA conspired to transport stolen catalytic converters and launder money. The evidence seized from their home and businesses will only bolster the government's case.

Finally, the history and characteristics of the defendants weigh in favor of detention. N. KHANNA and T. KHANNA have the sophistication and cunning to evade law enforcement and flee the United States. Moreover, they have the resources, connections, and ability do so. N. KHANNA and T. KHANNA's bank accounts received over $545 million from a metal refinery. While the government has endeavored to seize as much of this as possible, it is highly likely that some of this was beyond its reach. For example, according to Facebook records, on June 5, 2022, N. KHANNA wrote, "I am up to $350,000 in crypto" and clarified that this was "Bitcoin and Ethereum." It is unknown how many bank accounts and financial instruments N. KHANNA and T. KHANNA have that the government was not able to freeze, including bank accounts in others' names, overseas, and digital currency. Moreover, both N. KHANNA and T. KHANNA were born in India and maintain ties there. They both speak Hindi. T. KHANNA is not a United States citizen. They are highly likely to flee the United States to avoid prosecution in this case.

Release on an unsecured bond with no third-party custodian will not mitigate the N. KHANNA and T. KHANNA's flight risk, particularly when they face possibly decades in prison and potential deportation. The government estimates that N. KHANNA and T. KHANNA's total offense level would be 41, so they are facing a Sentencing Guidelines range of 324 to 405 months' imprisonment. Likewise, the release conditions proposed will not protect the community from the trafficking of stolen catalytic converters and the concomitant danger to the community.

6

# IV. CONCLUSION

For the reasons set forth above, the Government requests that the Court enter the separately filed proposed order staying the proceedings pending a hearing on the motion to revoke.

The Government further requests that the Court revoke the release order after a hearing on the motion.

Respectfully submitted,

Dated: November 3, 2022

PHILLIP A. TALBERT
United States Attorney


By: /s/ *Veronica Alegría*
VERONICA M.A. ALEGRÍA
Assistant United States Attorney

7