

Alan Eisner, Esq.* **
Dmitry Gorin, Esq.* **
Robert Hill, Esq.

16000 Ventura Boulevard
Suite 1000
Encino, California 91436
T 818.781.1570
F 818.617.2615

1999 Avenue of the Stars
11th Floor
Century City, CA 90067
T 310.328.3776

\* Professional Corporation
\*\* Certified Specialist, Criminal Law
   State Bar of California, Board of Legal Specialization

www.EGattorneys.com

January 18, 2023

VIA ECF

Hon. Kimberly J. Mueller
Chief United States District Judge

Re:   United States v. Navin Khanna (22-CR-00213-KJM-1)
      Response to Government's Untimely Reply

Dear Chief Judge Mueller:

    Defendant appreciates the Court's leave to file a response to the government's untimely reply. (Dkts. 116; 118.) In the face of more-than-adequate sureties and collateral, the government invites the Court to speculate about facts not in evidence including the motives of Defendant's sureties. As the government offers no serious rebuttal to Defendant's authorities, the Court should grant bond on conditions.

    1.    Encumbered Property

    The government attempts to distinguish *Frazier* by claiming its concern is not with its ability to collect on its property interest, but with "the strength of this surety to ensure defendants' appearance is markedly diminished because of the primary lien." (Dkt. 116 at 1.) This argument fails for two reasons. First, the first full paragraph of the government's argument about the encumbered property contains a laundry list of concerns precisely on the issue of whether the government's ability to collect on its property interest. The government worries that it will "lack[] visibility and control into the lien," that it "[m]ay not be able to initiate foreclosure proceedings, and may even be forbidden from doing so," that the "pace and timing would be controlled by the primary lien holder," and that the amount of the primary lien may increase. (Id.) As the government states, "the existence of a primary lien compromises the government's ability to enforce its own lien." In other words, the government is concerned with its ability to collect on its property interest.

    Second, notwithstanding its arguments, if the government's concern were truly for the deterrent effect of the secondary lien without reference to the government's ability to collect, that concern would be incoherent. Why would a defendant be less deterred by his loved ones losing their home because a private party rather than the government may ultimately receive a share of the proceeds from a forfeiture sale? There is no logical reason to believe this would be so, and the government makes no attempt to offer one.

2.      Non-citizen Acting as Signatory of Unsecured Bond

The government cites no authority holding that a non-citizen is not a proper signatory of an unsecured bond. Its objection relies on speculation about the signatory's possible future deportation.

3.      The Badwalls' Property

To the extent the government's objection is based on pretrial requiring additional time to vet the collateral, the appropriate course would be to allow pretrial the time needed to complete its review, which should be well under way. (See Dkt. 111-3, email notifying Pretrial of the Badwel's residence, and their desire to tender it as collateral on January 11, 2023, over 48 hours before the parties were to submit their respective supplemental positions.) The government raises the specter of "reported conversations with pretrial services officers," which suggest that sureties are being "coerced or supported," by "the family." The government offers no evidence to support these insinuations. If the government is referring to Defendant's family encouraging other family members and loved ones to act as sureties, Defendant submits that is a wholly appropriate effort for loved ones of a criminal defendant to undertake.

4.      Indian Bank Account and Company

The government raises Defendant's *father*'s partnership in an Indian company and the company's ownership of a bank account. At the outset, it must be noted that there is no allegation that Defendant is involved in this company or has access to its assets. It is unclear what relevance Defendant's father's business activities has.

That said, Defendant respectfully encloses Exhibit D, which consists of the past three months of bank statements for the relevant account. The balance on the account varied from $80,603.53 to $79,895.53 between October 2022 and December 2022.

5.      Alleged Missing Cash

The government's position on the supposed $22 million in "missing" cash requires the Court to assume (1) that the government's financial analysis, unsupported by record evidence but based on its "[f]urther digging," (Dkt. 116 at 3) is accurate; (2) that no other explanation such as un-invoiced purchases could account for the apparent recordkeeping discrepancy; and (3) critically, that because $22 million in cash is unaccounted for, that renders all conditions short of pretrial detention ineffective at securing Defendant's appearance. The last point should be dispositive. The government has Defendant's passport. It has seized his assets. It is being offered liens against the homes of his loved

ones.  Defendant is willing to submit to home confinement enforced by electronic GPS monitoring with exceptions only for medical emergencies and legal visits.

Defendant respectfully submits that there is no evidence to suggest that this combination of conditions is insufficient to ensure his return to court.  Defendant should not be denied pretrial release – the norm, not the exception – based on speculation and conjecture by the government in a belated filing.

Very truly yours,

EISNER GORIN LLP

*/s/ Alan Eisner*

ALAN EISNER
Attorney for Defendant
NAVIN KHANNA