

Alan Eisner, Esq.* **
Dmitry Gorin, Esq.* **
Robert Hill, Esq.

16000 Ventura Boulevard
Suite 1000
Encino, California 91436
T 818.781.1570
F 818.617.2615

1999 Avenue of the Stars
11th Floor
Century City, CA 90067
T 310.328.3776

\* Professional Corporation
\*\* Certified Specialist, Criminal Law
   State Bar of California, Board of Legal Specialization

www.EGattorneys.com

VIA ECF

January 23, 2023

Hon. Kimberly J. Mueller
Chief United States District Judge

Re:   United States v. Navin Khanna (22-CR-00213-KJM-1)
      Response to Government's Unauthorized Filing

Dear Chief Judge Mueller:

    Defendant appreciates the Court's leave to file a response to the government's unauthorized filing, which follows on from its prior untimely reply in violation of the Court's scheduling order. (Dkts. 116; 120.) The government invites the Court to speculate about the existence of an undiscovered trove of millions of dollars in cash based on what amount to yet-to-be-explained accounting discrepancies. There are other reasonable explanations other than hoarding away cash for these discrepancies, difficult though they are to establish while Defendant remains in custody and therefore substantially hampered in his ability to assist counsel. Defendant sets out several factors which may account for the apparent disparities in cash withdrawals and cash invoices here, but also respectfully suggests that bond should be granted notwithstanding any apparent accounting disparity.

    As the Court is aware, Defendant and his brother were released on bond, without location monitoring, in New Jersey prior to the government obtaining an arrest warrant from this Court, in part, by misrepresenting the procedural history of the case. The government does not, nor could it, explain why the defendants did not avail themselves of these multiple days of freedom to utilize the supposed millions in secreted away cash to take the private jet flight which the government repeatedly references. Rather, the defendants remained at their residences while they attempted to reach out to government counsel through their New Jersey defense attorney to coordinate self-surrender to the Eastern District. As the Court is aware from prior filings, the government chose to ignore these overtures and instead pursue the defendants re-arrest and detention, as it continues to do here. The charges consist of non-violent economic offenses against defendants with minimal or no prior criminal history. Bond should be granted.[1]

---

[1] In his prior filing, Defendant explained that his father controls an Indian bank account. The filing incorrectly stated that the account contains approximately

Case 2:22-cr-00213-KJM   Document 124   Filed 01/23/23   Page 2 of 3

Re: <u>Navin Khanna</u>
Page 2 of 3

    1.    Blacey's Invoices

Of the alleged $27 million in unaccounted-for cash withdrawals, the majority, $17 million, occurred in the first ten months of 2022. In August 2022, however, Defendant purchased Blacey's Auto Parts as discussed in a prior filing. Of the over $5 million based on the government's accounting (Dkt. 120-6 at 5-6) withdrawn between August and November, Defendant believes much or all of the cash was used to satisfy Blacey's invoices. Defendant does not have access to the Blacey's invoices to verify this as the government seized all of the computers which contain the accounting information for Blacey's.

    2.    Mislabeling of Invoices/Missing Invoices

Defendant is confident that a substantial number of invoices which appear on their face to have been satisfied by bank draft/wire transfer were in fact satisfied in cash, which leads to the overestimation of unaccounted-for cash withdrawals. While the exact number will require a forensic audit which cannot practically be accomplished within the current deadlines, at least one such mislabeled invoice has been confirmed.

Exhibit A is an invoice for catalytic converters from Titan Auto Recycling LLC. It states that the amount of $300,000 was satisfied by "draft on 07/26/2022." A review of the July 2022 bank statement from Defendant's Investors Bank account (Exhibit B) shows that no such draft occurred. Consistent with the government's Exhibits D, F, and H (Dkts. 120-2, 120-4, 120-6), only the Investors accounts was being used in the month of July 2022. The TD account was closed in April 2021, the Wells Fargo in April 2022, and the Valley National in June 2022. The Truist account was first used in September 2022.

The government's Exhibit G (Dkt. 120-5 at 11) does not list the Titan Auto transaction among the cash invoices paid, likely because it was not labelled as a cash transaction in DG Auto's InvoiceASAP system. This discrepancy, combined with the fact that the invoice amount is for a large, round number, leads to a strong inference that Titan Auto was in fact paid by DG Auto in cash, and that the invoice incorrectly reflected payment by draft.

Keeping in mind that DG Auto satisfied close to $600 million in invoices during the relevant period, the significant majority of which were paid through wire transfers or checks, it is not surprising negligent accounting practices could account for a $26 million discrepancy. Indeed, when DG Auto began operation it was a start-up with a relatively inexperienced staff which may have mislabeled invoices, or neglected to invoice some

---

$80,000. The account is in fact denominated in Rupees, giving it a United States Dollar value of approximately $1,000.

cash transactions at all.  While Defendant worked between 2020 and 2022 to implement better management controls, and move more and more of the business to a strictly wire transfer/check rather than cash basis, this evidently was not done in the early years of the business.

       3.      The Government's Citation to *Szott* is Inapposite

The government cites *United States v. Szott*, 768 F.2d 159 (7th Cir. 1985) for the proposition that "$1 million bond appropriate when offense involved $2.6 million that was unaccounted for[.]" (Dkt. 120 at 2.)  *Szott* is readily distinguishable.  There, the government had recovered *none* of the proceeds from the offense.  *Szott*, *supra*, at 160.  More importantly, "the defendant, a citizen of Canada, has no family ties in the United States and has not resided here for long.  In light of the high stakes of the case and the defendant's lack of ties to the community, it was permissible for the magistrate and the district judge to conclude that the risk of flight is substantial and that low bail would not inhibit flight." *Id*.

Defendant, unlike Szott, has longstanding and continuous ties to the United States.  He is a United States citizen.  He graduated high school in the United States.  His wife, children, and almost all of his extended family live in New Jersey.  He has offered significant sureties, including the homes of two loved ones as collateral.  Had any, much less all, of those factors been present in *Szott*, it is unlikely the Seventh Circuit would have resolved the case in a 6-paragraph *per curiam* opinion affirming the setting of bail at $1 million.

Very truly yours,

EISNER GORIN LLP

*/s/ Alan Eisner*

ALAN EISNER
Attorney for Defendant
NAVIN KHANNA